# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| DAVID ALAN THOMAS | § | |
| v. | § | CIVIL ACTION NO. 6:09cv130 |
| SHERIFF PAT BURNETT, ET AL. | § | |

### MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff David Thomas, currently an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the Van Zandt County Jail. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding, pursuant to 28 U.S.C. §636(c). As Defendants, Thomas named Sheriff Pat Burnett, George Flowers, George Adams, Rusty Grimes, Nicole Griffin, Charlie Barton, and officers Burns, Prock, Tisdale, Harrelson, Johnson, Jackson, and Swisher. Thomas also named Judge Teresa Drum, but Judge Drum has already been dismissed from the case.

An evidentiary hearing was conducted on February 18, 2009. At this hearing and in his complaint, Thomas said that when he was booked into the Van Zandt County Jail, he "had words" with Officer Swisher. The officer then put him in a cell with other inmates, and while Thomas was sitting there eating, three inmates jumped him. They punched him in the mouth and in the back. Finally Swisher and another officer, whom Thomas called "Robocop," came into the cell and removed Thomas, placing him in an observation cell. He remained in this cell for about 30 minutes before being moved again.

Thomas said that some time later, after his release from the jail, he ran into one of the inmates who had assaulted him. This individual told Thomas that Officer Swisher had paid the inmates to attack him. Thomas said that commissary items belonging to him had been confiscated, speculating that these goods were used to pay the assailants.

Next, Thomas stated that at one point, he was taken to court along with a group of other prisoners. He was talking to the inmate next to him, and the escorting officers told him to stop talking. Thomas says that he did so, but when he started talking again, the officers wrapped duct tape around his face.

Thomas acknowledged that there was paperwork documenting this incident, but said that it was "lies." This paperwork claims that Thomas was cursing at Judge Dunn, but he was not. After the tape was placed on his face, he used his handcuffs to remove it, but the officers put it back on and handcuffed him behind his back. Thomas chewed through the tape and so the officers wrapped it all around his head. When he was called up to see the judge, Thomas said, the officers "ripped" the tape off of his head, taking some skin from the back of his neck along with it. Thomas said that this incident had happened in 2007; however, the records show that it actually occurred in 2005.

Thomas stated that he started writing to the ACLU and the Texas Jail Standards Commission, and the jailers began opening his mail. They brought him a letter from the Jail Standards Commission which had been opened, and explained that they "thought it was theirs." He also said that one letter which he received from the ACLU had been opened outside of his presence. Thomas explained that he had written to the ACLU and they simply sent his letter back, stamped as received, with a note telling him to file another grievance. He said that the Jail Standards Commission also advised him to file a grievance. Thomas stated that he did file grievances, but never received a response.

Thomas said that he was put in isolation cells without a hearing and that he could not get any hygiene supplies. He said that he was told that the jail would not issue him hygiene supplies because he had money on the books, but that he could not go to the commissary and was unable to get a

commissary slip with which to purchase anything. As a result, Thomas said that he went without soap or toothpaste for months.

On one occasion, Thomas said, there was a fire in the jail, and Rusty Grimes took him to the gym. He said that Grimes put him on the floor and "jumped up and down on my arms." Although he said that Grimes weighed 200 pounds, Thomas stated that he was not injured nor even bruised by Grimes' actions.

On another occasion, Thomas said that he was placed in a restraint chair. He explained that he had been in his cell and was yelling down the run to get some guards to come to his cell. He was moved from 21 cell to 5 cell, but the TV did not work and so he pushed the button in the cell. The guards came to his cell and placed him in the restraint cell. Officer Barnes choked him, pushed him into the chair, and then took him to the detox cell. The chair tipped over and Thomas says that he was left there, in the chair, for about 45 minutes to an hour. Finally, Officer Prock picked him up and asked if he was "calming down."

After the fire, Thomas said that he was put in 18 cell by himself. This cell flooded every time someone on the run flushed their toilet. He was moved to 5 cell, which had a TV, but he was accused of flooding this cell when he washed his clothes in the sink. Thomas said that he was then moved to 22 cell, where he remained for about a month.

Thomas said that he was suing Sheriff Burnett because he wrote Burnett letters but the sheriff never came to see him, and because "he's the guy in charge." He said that George Flowers was the chief of general operations and put him in punishment cells without disciplinary hearings, and that Flowers never responded to his grievances. Thomas acknowledged that some officers told him that these were not punishment cells, but that other officers said that they were.

Next, Thomas said that Lt. Adams placed him in a cell with an inmate named Hamilton, knowing that Thomas had had trouble with him and thinking that Hamilton would "straighten him out." He acknowledged that there were six inmates in the cell but said that Adams would have known that he, Thomas, would be assaulted. He also said that Adams "did not do his job." Thomas

said that Grimes had jumped up and down on him and that Officer Barton and Officer Griffin had duct-taped him when he went to court.

Thomas said that Officer Prock left him in 18 cell after the sewage backed up, and then shackled him when he kept kicking the door. Thomas said that he washed his clothes in the toilet and the jailers thought that he was flooding his cell.

On another occasion, Thomas said that he got sick and "threw up everywhere," and the officers cut off the water to his cell and would not let him clean it up. He said that Officer Harrelson kept trying to get inmates to beat him up, but some of these inmates were friends of Thomas and they told him what was going on. He stated that Harrelson harassed him by such actions as kicking the "beanhole" on the door and "talking bad" to Thomas' wife.

Thomas said that Sgt. Johnson sprayed him with tear gas, but that he, Thomas, did not even realize it. He stated that he was kicking his door and yelling because he wanted to go to recreation, and that this by itself was not good reason to spray him with tear gas. Thomas also said that on one occasion, Officer Jackson threatened him by telling him to "come to the pipe chase and fight me."

On cross-examination, Thomas denied being put into a side cell for fighting with minority inmates. He said that he kicked the door when he had to, if no guards came to his cell. He also denied kicking a door until the beanhole (i.e. the slot in the door through which food is passed) broke, trying to grab anyone through the door, or throwing body waste on anyone through the door.

Thomas stated that he was only placed in the restraint chair once. He said that he had been trying to get officers to come to his cell and denied pushing the intercom button constantly, saying that he only pushed it until someone answered. He said that he was in the tipped-over restraint chair for "longer than 20 minutes." When asked about a letter he had written to Flowers, Thomas stated that he was told that if he apologized, he could get a TV, so he did.

Thomas denied being disruptive in court or cursing at Judge Dunn. He stated that he had merely been talking in low tones to the prisoner next to him.

Next, Thomas acknowledged making "rooster calls" and "donkey calls" in the jail. When asked if he had been so disruptive on one occasion that the Justice of the Peace, who was holding arraignments in the jail, had to have him moved, Thomas said no, he was moved because he had been talking to his wife, who was also a prisoner in the jail.

Thomas stated that he never got his written requests back, and that he was allowed to go to the law library "once in a while." He said that he went to recreation three times a week "if he was lucky." He denied starting the fire in the jail, and said that Grimes had been the officer who arrested him. Thomas reiterated that Grimes had jumped up and down on him without leaving any bruises on his arms.

Thomas denied "cursing non-stop" or threatening jailers by saying that he would sexually assault their wives. He denied breaking a television and said that he was not really a violent person. However, he conceded that he threw the first punch at inmate Hamilton. Thomas also denied refusing to go to court, saying that when he was called out, he was "asleep." He denied knowing that other inmates had complained about him and about his flooding his cell

The next witness called at the hearing was George Flowers, the jail administrator. Flowers said that the Van Zandt County Jail had no disciplinary procedures, and so there were no punishment cells, no segregation cells, and no imposition of punishment such as commissary restrictions. He said that the jail did have single cells, which were generally used for the most disruptive inmates. Flowers stated that inmates could get "indigent packs" of hygiene supplies if they had no money, and noted that he had received a letter from Thomas apologizing for his behavior. Thomas was given the opportunity to cross-examine Flowers, but declined.

Officer Nicole Griffin testified that she now works for the Wills Point Police Department. She stated that the duct tape incident had occurred in 2005, when she still worked for Van Zandt County. Griffin said that Judge Drum had ordered that any inmate who talked would be duct taped, and stated that she, Griffin, repeatedly told Thomas to stop talking but he would not. Thomas was offered the opportunity to cross-examine Griffin but declined.

5

Officer Charlie Barton also testified that the duct tape incident happened in 2005, when he was working in the Criminal Investigation Division of the Van Zandt County Sheriff's Department. He said that Judge Drum said for Thomas to stop talking and so he, Barton, warned Thomas, but that Thomas called Judge Drum some vile epithets and so he got duct taped. Thomas tore off the tape and then chewed through it when it was put back on. As a result, Thomas was re-shackled and duct taped again. Thomas was offered the opportunity to cross-examine Barton but declined.

Officer Jason Burns said that Thomas had been removed from a church service for talking and then began kicking his door and "abusing the intercom." Thomas threw his sandwich across the cell, When the restraint chair was brought, Burns said, Thomas sat down in it but then began to resist, and so Burns had to place him forcefully in the chair. Burns then took the chair to the detox cell and shackled it to the grate so that it could not turn over. He said that Thomas stayed in the restraint chair for about 20 minutes.

Burns said that Thomas fought with other inmates and would destroy cells and kick the door slots, breaking their hinges. On one occasion, Thomas was in his cell yelling and screaming and so a justice of the peace who was doing arraignments in the jail had to ask that Thomas be moved.

Burns stated that he had not been at the jail on the day of the fire. On another occasion, he said, the officers were moving the inmates in 23 Cell to the gym, and Thomas went and hid in the laundry room. A trustee snitched on him and Burns went in and found Thomas hiding behind some blankets. He noted that Thomas has threatened Burns' family and that other inmates complained about Thomas' behavior.

On cross-examination, Burns denied choking Thomas or having his chair turned over. He acknowledged that on one occasion, Thomas' toilet did malfunction.

The last witness called at the hearing was Officer Prock, who testified that he knew Thomas as a troublemaker. He said that inmates are offered recreation three times a week. Prock said that he had been told by other sergeants that Thomas had flooded his cell. Prock said that he was

unaware of any plumbing problems, and that he went to Thomas' cell and looked down the drain and saw no such problems.

Prock said that Thomas kicked his cell doors constantly, and that Burns had to go and repair the doors. He said that Thomas abused the intercom system and that he grabbed an officer through the door slot. On one occasion, Thomas was doing "rooster calls" in the jail and disrupting a justice of the peace, so he had to be moved to 21 cell. Thomas was offered the opportunity to cross-examine Prock, but declined.

## Legal Standards and Analysis

The first claim raised by Thomas is that he was duct taped while making a court appearance. The evidence at the hearing showed that this incident occurred in 2005.

In determining the length of the statute of limitations in section 1983 cases, federal courts borrow the forum state's general personal injury limitations period. Owens v. Okure, 109 S.Ct. 573 (1989); Burrell, 883 F.2d at 418. The appropriate limitations period in Texas is two years. Burrell, 883 F.2d at 419.

A cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. Lavellee v. Listi, 611 F.2d 1129, 1131 (5th Cir. 1981). Here, Thomas was obviously aware of the incident at the time that it occurred, and so Thomas had two years from that date in which to bring suit.

However, Thomas did not sign his lawsuit until February 23, 2009, which is more than two years after any time in 2005. He shows no basis for tolling, equitable or otherwise, of the limitations period. Thomas' claim on this point is therefore barred by the statute of limitations.

Next, Thomas complains of an incident in which he contends that a jailer named Swisher apparently paid four inmates to assault him. He says that this incident took place right before the duct taping, which would also place it in 2005. This claim is also barred by the statute of limitations.

Third, Thomas complains about a letter which he received from the ACLU, and a letter which he received from the Texas Jail Standards Commission, being opened outside of his presence. The

Fifth Circuit has held that a claim that legal mail was opened outside of a prisoner's presence, in violation of facility regulations, does not by itself state a constitutional claim. Brewer v. Wilkinson, 3 F.3d 816 (5th Cir. 1993). Other courts have held that, while the opening of incoming legal mail is improper, isolated incidents of such opening will not set out a claim of constitutional dimensions. *See* Morgan v. Montayme, 516 F.2d 1367 (2nd Cir. 1975), *cert. denied* 424 U.S. 973, 96 S.Ct. 1476 (1976); Chinchello v. Fenton, 763 F.Supp. 793, 796 n.5 (M.D.Pa. 1991); Pickett v. Schaefer, 503 F.Supp. 27, 28 (S.D.N.Y. 1980). The isolated incidents of two letters being opened do not state a constitutional claim. Thomas' claim on this point is without merit.

Fourth, Thomas complained of an incident in which he was taken to the gym and Rusty Grimes jumped up and down on his arms. Although Thomas said that Grimes weighed some 200 pounds, he stated that he suffered no injury, not even a bruise.

The Fifth Circuit has made clear that no constitutional claim is stated when an alleged use of force results in no injuries. Brown v. Lippard, 472 F.3d 384, 387 (5th Cir. 2006), *citing* Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999); Jackson v. Culbertson, 984 F.2d 699 (5th Cir. 1993). Thomas' claim on this point is without merit.

Fifth, Thomas says that he was placed in a restraint chair by Officer Burns, who choked him, and that the chair was taken to the detox cell and tipped over. This claim requires further judicial proceedings.

Sixth, Thomas says that he was placed in various cells which flooded on occasion. He acknowledges that he had been "washing his clothes in the toilet" on one occasion and "in the sink" on another, and so the jailers thought that he had flooded the cells himself. In his complaint, Thomas says that Lt. Adams "had water turned off in cell for days with no water to drink, left in cell with backed up sewage for several days with floor covered, smell like urine." He also said that Officer Prock left him in such a cell all night.

In Davis v. Scott, 157 F.3d 1003 (5th Cir. 1998), the plaintiff Robert Davis alleged that he was placed in a "crisis management cell" which had no light and electrical wires hanging from the

outlet, so he asked to be placed in a different cell. The second cell was "just filthy," with blood on the walls and excretion and food on the floor. He complained about this cell as well, but was given cleaning supplies and left in it for three days. Davis alleged that the conditions in the management cells "bring forth hatred and hostility" and sought punitive and psychological damages, as well as injunctive relief. He did not allege any physical injury as a result of his confinement to the management cells. The district court dismissed the lawsuit based on the lack of allegation of injury, and the Fifth Circuit affirmed, stating that Davis "did not suffer an extreme deprivation of any minimal civilized measure of life's necessities." The Court cited cases such as Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation when prisoner was exposed to raw sewage from an overflowed toilet for four days) and Shakka v. Smith, 71 F.3d 162, 167-68 (4th Cir. 1995) (no Eighth Amendment injury when prisoner was given water and cleaning supplies but was denied a shower for three days after having human excrement thrown on him).

A very similar circumstance exists in this case. Thomas alleges a relatively brief exposure to unsanitary conditions in his cell, giving no indication that he suffered any injury as a result. Under the Fifth Circuit's decision in Davis, this claim fails to rise to the level of a constitutional violation, and may be dismissed on that basis.

Similarly, Thomas says that on another occasion, he threw up, and Sgt. Tisdale would not let him clean it up. While the Court certainly does not condone such actions, Thomas has not shown that it rises to the level of a constitutional violation. His claim on this point is without merit.

Next, Thomas says that Officer Harrelson kept trying to get other inmates to assault him, and that she harassed him by kicking his door and "talking bad" to his wife. He does not indicate that he was ever actually assaulted as a result of Harrelson's actions, explaining that some of the inmates whom she approached were his friends and told him about what was going on.

Once again, Thomas does not allege that he suffered any injuries as a result of Harrelson's actions, improper though these actions may have been. Furthermore, his sole basis for his claim that Harrelson solicited other inmates to assault him is the hearsay statements of these inmates. Although

Thomas says that Harrelson tried to get other inmates to assault him, he offers nothing to show that he was ever in serious danger of such an assault. *Compare* Horton v. Cockrell, 70 F.3d 397, 400 (5th Cir. 1995) (prisoner must show that he is incarcerated under conditions showing "a substantial risk of serious harm" and that the official's state of mind is one of "deliberate indifference.") Even under the assumption that Harrelson's actions bespeak deliberate indifference, Thomas has not shown that this indifference created a "substantial risk of serious harm." His claim on this point is without merit.

Nor has Thomas shown any valid basis for a constitutional claim with regard to his complaint that Harrelson harassed him through such actions as kicking his door and "talking bad" to his wife. Indicia of confinement constituting cruel and unusual punishment include wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities. Wilson v. Lynaugh, 878 F.2d 846, 848 (5th Cir.), *cert. denied* 493 U.S. 969 (1989). The Supreme Court has held, however, that to the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. Rhodes v. Chapman, 452 U.S. 337, 346-7 (1981).

The Rhodes Court held that any Eighth Amendment analysis must look to the evolving standards of decency that mark the progress of a maturing society, but cautioned that the standards are derived from objective factors. Rhodes, 452 U.S. at 346.

In compliance with the Supreme Court's opinion, the Fifth Circuit has stated that the Eighth Amendment does not afford protection against mere discomfort or inconvenience. Wilson, 878 F.2d at 849. Harrelson's actions, as alleged by Thomas, may have been childish and petty, but Thomas has not shown that they rise to a constitutional violation. His claim on this point is without merit.

Next, Thomas alleged that Sgt. Johnson sprayed him with tear gas, but conceded that he was not even aware of it. As such, Thomas obviously suffered no ill effects as a result of the gas, and has failed to show that this incident rises to the level of a constitutional violation. *See, e.g.,*

Bradshaw v. Unknown Lieutenant, 48 Fed.Appx. 106 (5th Cir., August 21, 2002) (not selected for publication in the Federal Reporter), the plaintiff claimed that he was sprayed with Mace because he refused to accept a new cell assignment. As a result, he said, he suffered burning eyes and skin for approximately 24 hours, twitching of the eyes, blurred vision, irritation of the nose and throat, blistering of the skin, rapid heartbeat, mental anguish, shock, and fear. The Fifth Circuit said that through these allegations, the plaintiff "has not shown that he suffered more than a *de minimis* injury." Thomas does not allege even this level of injury in this case. His claim on this point is without merit.

Thomas says that Officer Jackson told him to "come to the pipe chase and fight him." He does not indicate that any fight actually took place. The Fifth Circuit has held that mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983). The use of words, no matter how violent, does not comprise a section 1983 violation. Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). This statement by Jackson was essentially a "mere threat," and as such, does not rise to the level of a constitutional violation. Thomas' claim on this point is without merit.

Thomas complains that he was placed in a cell with an inmate named Hamilton, and that the officers knew that there would be a fight. He acknowledged, however, that when the fight came, he threw the first punch. He does not show how the officers would have known that there would be a fight, nor that his placement in the cell with Hamilton amounted to deliberate indifference rather than negligence or carelessness. *See* Davidson v. Cannon, 474 U.S. 344, 347-48 (1986) (lack of due care resulting in assault was insufficient to set out a constitutional claim). Thomas' claim on this point is without merit.

Thomas complained that the grievances which he filed were not answered. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail

to do so.  Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also* Edmond v. Martin, et al., slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); Thomas v. Lensing, et al., slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same).  His claim on this point is without merit.

Finally, Thomas complained that he was given no hygiene supplies and was unable to purchase any from the commissary, with the result that he went without soap or toothpaste for months.  The Fifth Circuit has held that the deprivation of the "basic elements of hygiene" could set out a constitutional claim.  Daigre v. Maggio, 719 F.2d 1310, 1312 (5th Cir. 1983).  This claim, if proven, sets out a potential constitutional claim and requires further judicial proceedings.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees.  Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory.  Neitzke v. Williams, 490 U.S. 319, 325-7 (1989).  A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, all of Thomas' claims except for his assertions that (1) he was choked, placed in a restraint chair which was then tipped over, and left there for 45 minutes to an hour, and (2) he was denied soap and toothpaste for an extended period of time, lack any arguable basis in law and

fail to state a claim upon which relief may be granted. Consequently, all of his claims except for these two may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that all of the Plaintiff's claims except for his claims that (1) he was choked, placed in a restraint chair which was then tipped over, and left there for 45 minutes to an hour, and (2) he was denied soap and toothpaste for an extended period of time be and hereby are DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. It is further

ORDERED that all of the Defendants in this lawsuit except for Lt. George Flowers and Officer Burns are hereby DISMISSED from the lawsuit with prejudice. The dismissal of these claims and parties shall have no effect upon the remaining claims and parties in this lawsuit. Finally, it is

ORDERED that the dismissal of these claims and parties shall not count as a strike under 28 U.S.C. §1915(g).

So **ORDERED** and **SIGNED** this **2** day of **April, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE